IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

THE UNITED STATES OF AMERICA, )
)
Plaintiff, ) Criminal Case No.
) 15-113(DRD)
vs. )
)
Maykel Agner Pedroso-Gonzales )
(02), )
)
Defendant. )

---

TRANSCRIPT OF SENTENCING HEARING
THE HONORABLE JUDGE DANIEL R. DOMINGUEZ PRESIDING
JOSE V. TOLEDO U.S. COURTHOUSE, SAN JUAN, PUERTO RICO
THURSDAY, JUNE 9, 2016

---

A P P E A R A N C E S

For the United States:
Glenn Goetchius, SAUSA
United States Attorney's Office
District of Puerto Rico
Torre Chardon, Suite 1201
350 Carlos Chardon Avenue
San Juan, PR 00918

For Defendant:
Artemio Rivera-Rivera, Esquire
90 Carr. 165 Suite 309
Guaynabo, PR

USPO: Miguel A. Arroyo-Domenech
INTERPRETER: Marie Hernandez
CLERK: Ana Romero
Proceedings taken by Certified Court Reporter and transcribed using Computer-Aided Transcription


(Proceedings commenced at 10:13 a.m.)

THE CLERK: United States of America versus Maykel Agner Pedroso-Gonzales. Criminal Case No. 15-113. Sentencing hearing.

On behalf of the Government, SAUSA Glenn Goetchius.

On behalf of the defendant, Attorney Artemio Rivera-Rivera.

Defendant is present in court and he will be assisted by the official court interpreter.

THE COURT: Marshal, please take the handcuffs away.

MR. GOETCHIUS: Good morning, Your Honor. United States ready to proceed.

MR. RIVERA: Good morning, Your Honor. The defense is ready.

THE COURT: All right. Okay. Has the presentence report been duly translated and explained to Mr. Maykel Agner Pedroso-Gonzales?

MR. RIVERA: Yes, Your Honor. My client was not in Puerto Rico. He was brought in recently. But I visited him yesterday and we discussed and translated it to him.

THE COURT: All right. Now, sir, you're -- before that. And if he had any questions, did you duly address them to him?

MR. RIVERA: I did, Your Honor. We discussed it and prepared for the hearing.

THE COURT: Mr. Maykel Agner Pedroso-Gonzales, sir, your lawyer has just made a representation to the Court, Mr. Artemio Rivera-Rivera, that he duly translated and explained to you and answered all the questions that you asked from him related all to the presentence report. Is he making a correct representation to the Court?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. So now, sir, the Court has read your memorandum and has read all the accompanying documents.

United States, has this defendant made the safety valve?

MR. GOETCHIUS: Yes, Your Honor.

THE COURT: All right. So, sir, the United States has just advised the Court that you have made the safety valve, which means that you told them everything that you knew about this crime. And, consequently, sir, the Court can sentence you below 120 months.

You originally signed a plea agreement where the Court could sentence you from 135 to 168 months. But because you have made the safety valve, the Court can now sentence you below 120 months. And, consequently, your sentence under the guidelines would be 108 to 120.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Okay. Now I'll hear your allocution.

United States, you may be seated. Thank you.

Go ahead.

MR. RIVERA: Very briefly. Your Honor, first of all, I had the opportunity to discuss the PSR with my client yesterday since he was not in Puerto Rico, and we have very few modifications. First of all, on page 2 --

THE COURT: Page 2, yes, sir.

MR. RIVERA: Page 2 on top where it says "arrest date", it should be February 7, rather than 9.

THE COURT: Mine has -- what paragraph are you?

MR. RIVERA: First one, Your Honor. On top of the page it says "arrest date".

THE COURT: Ah, okay.

MR. RIVERA: It should be February 7.

THE COURT: All right.

MR. RIVERA: And if the Court can notice that two lines below it says "detainer". And it says, "On February 7, 2015, the Department of Homeland Security lodged a detainer." So that is consistent. That is what my client informed me.

THE COURT: So the arrest date should be February?

MR. RIVERA: Seven.

THE COURT: Seven. And why not February 3rd?

MR. RIVERA: February 3rd?

THE COURT: Which is the date that the vessel was seized.

MR. RIVERA: That is true, Your Honor.

THE COURT: Any objection that it be February 3rd? That's the date that they were seized. They lost their -- they lost their freedom from February 3rd.

MR. GOETCHIUS: Your Honor, I would just point out, we don't disagree with the fact that they were detained at that time, but it was February 4th when the actual Atlantic VII was detained.

THE COURT: Okay.

MR. GOETCHIUS: So the morning of February 4th.

THE COURT: So the morning of February 4th.

MR. GOETCHIUS: Yes, Your Honor.

THE COURT: All right.

MR. RIVERA: All right.

THE COURT: Okay. So everything goes retroactive to February 4th.

Now go ahead.

MR. RIVERA: Your Honor, on page 3.

THE COURT: Three.

MR. RIVERA: Where it says "legal address," it should read Brisas -- rather than "Brisas de Armitan", it should read Brisas de Arraijan.

THE COURT: Spell it for me.

MR. RIVERA: A-r-r-a-i-j-a-n, as in "Nancy".

THE COURT: Thank you. So corrected.

MR. RIVERA: And then rather than 184 Street, it should read Second Street, or 2 Street, residence number 184.

THE COURT: Okay. Thank you.

All right. Anything further?

MR. RIVERA: On page 12.

THE COURT: 12.

MR. RIVERA: On paragraph 59.

THE COURT: 59.

MR. RIVERA: It says in the second sentence, "Upon completing his education, the defendant sought employment and found his first job in the Port of Vallamonte."

THE COURT: What paragraph again?

MR. RIVERA: Paragraph 59.

THE COURT: Okay.

MR. RIVERA: Instead of "Vallamonte", it should read Vacamonte.

THE COURT: Vacamonte.

MR. RIVERA: Right. V-a-c-a-m-o-n-t-e.

And that is all.

THE COURT: Is that all?

MR. RIVERA: Paragraph 60, the first sentence.

THE COURT: Yes.

MR. RIVERA: It should read, "During a work and

travel to Caratagena, Colombia, the defendant met with Ms. Loly Rus." L-u-z.

THE COURT: Luz.

MR. RIVERA: Right, rather than Rus.

And that would be it, Your Honor, as to the PSR.

THE COURT: All right.

MR. RIVERA: As to allocution, Your Honor, very briefly, Mr. Pedroso is 34 years old. He has two children, ages 5 and 7. He is a Cuban national, but a resident of Panama. He has completed courses in auto mechanics and has studied navigation at Academia InterAmerican de Panama. He has been continuously working in the maritime industry since the year 2002. He has accepted responsibility for this offense and has explained the probation officer that he did it because he needed money to buy a house for his wife and two children.

In prison he would like to take courses in welding, electricity, and mechanics, if possible.

THE COURT: Welding.

MR. RIVERA: Mechanics.

THE COURT: Mechanics.

MR. RIVERA: And electricity.

THE COURT: And electricity.

MR. RIVERA: Which is consistent with his education and his work experience.

I think the PSR shows that Mr. Pedrosa is a hard working man and he did wrong, very wrong, something that is inconsistent with most of his life, his family, history and their customs.

The Court should know that present in Court are part of his family. His father is the one with the sunglasses; Mr. Pedrosa. He's a Cuban national, but he live -- he's a resident in Panama. He lives in Panama. He's an industrial engineer. And he traveled from Panama here to Puerto Rico for this hearing.

Present also are his aunt. She's the lady with the green shirt. She has a Ph.D. and she is a full-time professor at University del Este in Carolina. She has been supporting Mr. Pedrosa. She has visited him to prison and she has met with me in my office on several occasions and has even come to court for other hearings. She is very supporting of her nephew. Present are also his cousin, one of his sisters, and his mother-in-law.

So we would like the Court to consider that this particularity that Mr. Pedrosa has very good family support. They are upset at what has happened. They are sorry. They support him, but they are also upset because they didn't expect this from him.

Mr. Pedrosa is aware and he feels --

THE COURT: United States, why is this defendant I

noticed not granted a minor participation?

MR. GOETCHIUS: Your Honor, we made that decision based on his position within the ship. The evidence --

THE COURT: He's the first mate.

MR. GOETCHIUS: He's the first mate, so second in command of the vessel.

THE COURT: He's the second in command of the vessel.

MR. GOETCHIUS: Second in command behind the captain. We also had evidence to support this. We would have a witness that would support his role as a leader on board, at least within the vessel. I'm not saying within the organization, the overall drug trafficking organization. So based on that I'm not saying --

THE COURT: He had special skills also.

MR. GOETCHIUS: As far as to get to that position, he certainly had special skills as a mariner in that regard. But that was across the board; everyone had a certain skill. As we know, there were welders, cooks on board. So he had the skills as a mariner, yes.

THE COURT: Counsel, do you agree with that?

MR. RIVERA: I believe that's part of the evidence, yes.

THE COURT: Okay. Very well. So I want him to know then that he's going to hear other co-defendants that are

below him in the boat that were granted a minor participant in the case -- minor participation in the case. But the Court, I was discussing it with the United States Probation Officer, and we thought that that was exactly what had occurred. So he's going to hear that some other persons below him are going to have a sentence smaller than him, but it's only because of his role as a first mate in the boat. I want him to know that. It's not that the Court is picking on him, it is that he is the second in command in the boat.

All right. Go ahead.

MR. RIVERA: That's it, Your Honor. We just wanted the Court to know that Mr. Pedrosa has very good family support, that he has a history of legal and legitimate work, and that he wants to go back to his life as soon as possible to support his children and family.

That would be it, Your Honor.

THE COURT: Thank you.

I'll hear allocution from the defendant. Sir, you are entitled to perform an allocution to the Court. The allocution constitutes, first, addressing yourself to your family, in Spanish if you so wish. And you're lucky that they are here behind you. And then your allocution to the Court relating to your position as to the sentence and whether or not you are repentant of what has occurred.

THE DEFENDANT: Yes, Your Honor. I would like to

ask the forgiveness to my family, to my father who has always advised me, and I ask him to forgive me. To my children, because I have left them alone, and the society of Puerto Rico and the United States. I did this because of the need that I felt due to the needs of my family. I thought I could do better for them and all that I have done is destroy them.

Your Honor, I am very repentant. I'm truly repentant. And believe me, I will never ever in my life do something like this again. All I want is to go back to my life as soon as possible in order to work and take my whole family, my children ahead in life, even though the time that I lost I will never recover.

I apologize, especially to you, Your Honor, and to all those present here in court.

I would also like to thank counsel for his work and also to all others who have helped me out throughout this situation.

That would be all. May God bless you all.

THE COURT: United States, what's your position of the United States now that he has made the safety valve?

MR. GOETCHIUS: Under the safety valve, we recommend a sentence of 108 months at a total offense level of 31.

THE COURT: All right. Is there any reason why the Court should not at this time pronounce sentence?

MR. RIVERA: No, Your Honor.

MR. GOETCHIUS: Not that we're aware of, Your Honor.

THE COURT: On February 10, 2016, the defendant, Maykel Agner Pedroso-Gonzales, pled guilty to Count II in the indictment in criminal number 15-113, which charges a violation of Title 21, United States Code, Section 952(a), a class A felony.

The November 1, 2015, edition of the United States Sentencing Guidelines has been used to apply the advisory guideline adjustments pursuant to the provisions of Guideline Section 1B1.11(a).

The guideline for a Title 21, U.S.C., Section 952(a) offense is found at United States Guidelines 2D1.1 of the guidelines. That section provides that an offense involving conspiracy to import at least 150 kilograms but less than 450 kilograms of cocaine has a base level of 36, pursuant to United States Guidelines 2D1.1.

Since the defendant has demonstrated acceptance of responsibility for his participation in the offense, the offense level is reduced three levels pursuant to guideline Section 3E1.1(a) and (b).

Because Mr. Pedroso-Gonzales has now complied with the provisions set forth in Title 18, United States Code, Section 3553(f)(1) through (5), and United States Guidelines 5C1.2(a)(1) through (a)(5), a two-level reduction has been applied and he is now eligible for a sentence below the

statutory minimum, which is 120 months.

He is also facing a fine range of 17,500 to $10 million, plus a supervised release term of at least five years.

The Court has reviewed the advisory guideline calculations and finds that the presentence investigation report has adequately applied the guideline computations. The guideline computations satisfactorily reflect the components of this offense by considering its nature and all of the circumstances surrounding this narcotic case. Furthermore, the Court has considered the other sentencing factors set forth at 18, U.S.C., Section 3553(a).

Mr. Pedroso-Gonzales is a 34-year-old Cuban, and a Panamanian citizen. He was a resident of Panama, and he has three dependents. The defendant has completed vocational education and was employed as a merchant marine at the Panama Canal and Port Vacamonte. The defendant is healthy and has no history of mental or health problems. Further, Mr. Pedroso-Gonzales has no reported history of substance abuse.

This is Mr. Pedroso-Gonzales's first known arrest and conviction.

Lastly, the Court has taken into consideration the elements of the offense and Mr. Pedroso-Gonzales's participation in the same. The Court has taken into

consideration all of Title 18, United States Code, Section 3553 factors, the elements of the offense, the plea agreement between the parties, and the need to promote respect for the law and protect the public from further crimes by the defendant, as well as addresses the issues of deterrence and punishment.

The Court deems that a sentence at the lowest end of the guideline range is a sentence that is just and not greater than necessary. Therefore, it is the judgment of this Court that Mr. Maykel Agner Pedroso-Gonzales is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 108 months, retroactive to February 4th of the year 2015.

Upon release from confinement the defendant shall be placed on supervised release for a term of five years under the following terms and conditions:

One. The defendant shall not commit another federal, state, or local crime and shall observe the standard conditions of supervised release recommended by the U.S. Sentencing Commission and adopted by this Court.

Two. The defendant shall not unlawfully possess controlled substances.

Three. The defendant shall refrain from possessing firearms, destructive devices, and other dangerous weapons.

Four. The defendant shall cooperate in the

collection of a DNA sample as directed by the U.S. Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code, Section 3563(a)(9).

Sir, if deported or granted voluntary departure -- and you will be deported, sir -- the defendant shall remain outside the United States and all places subject to its jurisdiction unless prior written permission to reenter is obtained from the pertinent legal authorities and the defendant notifies in writing the probation officer of this court to that effect.

The Court finds that the conditions imposed are reasonably related to the offense of conviction and to the sentencing factors set forth at 18, U.S.C., Section 3553. Further, the Court finds that the conditions imposed are consistent with the pertinent policy statements issued by the sentencing commission, pursuant to 28, U.S.C., Section 994(a), and there is no greater deprivation of liberty than what is reasonably necessary to fulfill the sentencing objectives including rehabilitation, positive reintegration to the community, just punishment and deterrence.

Having considered Mr. Pedroso-Gonzales's financial condition, a fine is not imposed. However, a special monetary assessment of $100 is imposed as required by law.

Sir, the Court grants you time to work and pay the $100. I don't want your family to pay the $100. I think you

should work.

The Court is going to recommend that you be authorized to engage in welding, mechanics, and electricity courses so there you can earn money by working.

Anything further at this time?

MR. RIVERA: No, Your Honor.

THE COURT: No, hold it.

No. No. As to what he was saying to you, anything further?

MR. RIVERA: Yeah, he was just telling me that he has been working all the time through since he has been in prison.

THE COURT: Okay. But this is -- but have you been earning money here?

You have.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Well, stay with your money. Just save $100 at the end so that you can pay this $100. Okay?

Sir, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary, or if there's other fundamental defect in the proceedings that was not waived by your guilty plea.

You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to the law.

With few exceptions, any notice of appeal must be filed within 14 days of judgment being entered in your case. However, a defendant, as you, may waive your rights as part of a plea agreement. And you, sir, have entered into a plea agreement which waives some or all of your rights to appeal the sentence itself. Such waivers are generally enforceable.

Sir, you agreed that you could be sentenced to over 135 months. The Court today, because you made the safety valve, has decreased your sentence enormously because you made the safety valve.

Now, the Court has precisely sentenced you to the lowest sentence possible within the guidelines. So I don't think this sentence is illegal. I don't think that your sentence was a sentence where you entered into it other than by an intelligent, voluntary, and knowing agreement. But anyway, if you have any doubts speak to your lawyer and ask him what his opinion is.

All right. But if you believe the waiver is unenforceable, you can present that theory to the appellate court. If you are unable to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis. If you so request, the clerk of the court will prepare and file a notice of appeal on your behalf.

The Court directs that the transcript of the sentencing proceedings be forwarded to the Sentencing

Commission, United States Bureau of Prisons, as well as the Probation Office within 30 days.

Preference to serve.

MR. RIVERA: Your Honor, my client would like to serve his term of imprisonment at --

THE COURT: The remaining part.

MR. RIVERA: Right. At a place where he can take courses in welding, electricity, or mechanics.

THE COURT: Okay. Very well.

MR. RIVERA: That's what is most important for us.

THE COURT: I think that is most intelligent, rather than a geographic place. Because he when he exits will have more to offer to his family by acquiring specialties in welding, mechanics, and electricity. So the Court orders pursuant to 18, U.S.C., Section 3553, subsection two, subsection a, subsection D, that he be entitled to take courses in welding, mechanics, and electricity. His preference is to serve in a Federal Bureau of Prisons facility where he can take those courses.

United States, you have to dismiss the remaining count.

MR. GOETCHIUS: Yes, Your Honor. We move at this time to dismiss the remaining count against this defendant.

THE COURT: The remaining counts are ordered to be dismissed.

Sir, good luck. Good luck to you. You took a chance and, unfortunately, you were at a position of leadership and you got caught.

Good luck.

MR. RIVERA: Good morning, Your Honor. Permission to withdraw.

THE COURT: You may withdraw, sir.

(Proceedings adjourned at 10:43 a.m.)

**REPORTER'S CERTIFICATE**

I, DONNA J. PRATHER, do hereby certify that the above and foregoing, consisting of the preceding 19 pages, constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 11th day of July, 2017.


                S/Donna J. Prather
                DONNA J. PRATHER, RPR, CRR, CBC, CCP
                Federal Official Court Reporter